UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


ZENG JEAN-JACQUES,

      Petitioner,

v.                                        Case No. 1:18cv2-MCR-HTC

MARK S. INCH,

      Respondent.

_____/

## ORDER AND REPORT AND RECOMMENDATION

This matter comes before the Court on Petitioner Zeng Jean-Jacques's *pro se* petition under 28 U.S.C. § 2254. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the petition, the State's response (ECF Doc. 21), and allowing Jean-Jacques an opportunity to reply,[1] the undersigned recommends the Petition be **DENIED** without an evidentiary hearing. As explained herein, the undersigned finds that Petitioner's eleven grounds lack legal and factual support.

---

[1] By order dated November 13, 2018, the Court granted Jean-Jacques thirty (30) days to file a reply. Jean-Jacques has not done so.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Jean-Jacques was charged by Information in Alachua County circuit court with second degree murder with actual possession and discharge of a firearm causing death, for the shooting of Theodrick Brown.  Jean-Jacques shot Brown thirteen (13) times in the early morning hours at an apartment in Gainesville, Florida, after a verbal dispute.[2]  Jean-Jacques moved to dismiss the Information under Florida's Stand-Your-Ground Law, asserting that he shot Brown in self-defense.[3]  The state court denied the motion and Jean-Jacques went to trial.

After a day of testimony, counsel for Jean-Jacques informed the court that his client wanted to plea to a lesser included offense.  The state court performed a plea colloquy in which the State set out the elements it was prepared to prove, and Jean-Jacques stated that he understood what he was pleading to and the implications of pleading guilty.  ECF Doc. 21-5 at 225-50.  The court also required the parties to file a written plea agreement.  ECF Doc. 21-2 at 72.  The agreement stated that Jean-

---

[2] Since the issues raised in the instant petition are limited to the *nunc pro tunc* order and the events that happened at the guilty plea hearing and sentencing, the facts of the underlying crime itself are not relevant to the determination of the petition and thus will not be discussed.  The facts, however, can be obtained from the transcript of the hearing held by the trial court on Jean-Jacques's motion to dismiss the Information.  ECF Doc. 21-4 at 49 to ECF Doc. 21-51 at 1.

[3] The state court found no evidence to support the application of the defense, other than Jean-Jacques's account of the events of the evening, which the court found not to be credible as it contained multiple inconsistent statements; admissions of lying; and inconsistencies with the statements from other witnesses and physical evidence.  ECF Doc. 21-2 at 27.

Jacques would plead to "Aggravated Manslaughter (lessor included)" in violation of 782.07 and 775.087(1)(b).[4]  It listed the "degree of crime" as "(F1)(L8)."  *Id.*

The state court accepted the plea on October 1, 2013, *id.* at 76, and entered a judgment the same day, which listed the crime exactly as it was described in the plea agreement.  ECF Doc. 21-2 at 69.  On October 31, 2013, the state judge sentenced Jean-Jacques at the high end of the agreed-on range to ten years' imprisonment and ten years supervised release.  *Id.* at 99.  The criminal punishment scoresheet identified the offense as "aggravated manslaughter while armed."  ECF Doc. 21-2 at 96.

## A.    *Nunc Pro Tunc* Amendment To The Judgment

While Jean-Jacques was serving his sentence, it was brought to his attention by prison officials that his offense charge was recorded as "AGG MANSL – ELDER/DISABLD."  ECF Doc. 21-3 at 19.  On May 2, 2014, Jean-Jacques filed a

---

[4] Fla. Stat. § 775.087(1)(b) applies to enhance a "felony of a second degree, to a felony of the first degree," if a firearm was involved and provides the following:

> (1)   Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows:
>
> > (a)   In the case of a felony of the first degree, to a life felony.
> > (b)   In the case of a felony of the second degree, to a felony of the first degree.
> > (c)   In the case of a felony of the third degree, to a felony of the second degree.

Fla. Stat. § 775.087.

motion to clarify his charges because "to Petitioner's knowledge, he was charged only with Aggravated Manslaughter without the 'ELDER/DISABLD' enhancement."[5]  *Id.*

On May 13, 2014, the state court denied the motion for clarification finding that the judgment "accurately reflects the purported offense to which Defendant pled" and that "the record does not support the use of the term 'Aggravated Manslaughter' to describe the actual offense to which Defendant pled."  ECF Doc. 21-3 at 23.  The court explained that Jean-Jacques pled guilty to violation of sections 782.07 and 775.087(1)(b); that section 782.07 encompasses four (4) different offenses, and that the only offense in that section supported by the record is the offense of manslaughter, which is also the only second-degree felony in that section. *Id*.  The court went on further to explain that it is clear from the plea petition that the parties intended for Jean-Jacques to plead to a first degree-felony and the offense manslaughter with a firearm is a first-degree felony.  *Id.* at 24.

The state court concluded, "[i]t appears that the parties in the instant case were attempting to achieve . . . a conviction for the lesser included offense of Manslaughter with a Firearm, reclassified from a second-degree felony to a first-degree felony through the use of a firearm."  *Id.*  The state judge further ordered the prosecutor and defense counsel to respond in writing and explain "whether they

---

[5] Under Fla. Stat. § 782.07, aggravated manslaughter requires the victim to be an elderly person, disabled adult, child or an officer, firefighter, or an emergency medical technician or paramedic.

stipulate to the correction of the offense listed on the Judgment to 'Manslaughter with a Firearm'" instead of "Aggravated Manslaughter."   ECF Doc. 21-3 at 25.  The May 13, 2014 order was sent to defense counsel, the prosecutor and to Jean-Jacques at Holmes CI.  *Id.* at 26.

Defense counsel responded on May 27, 2014, stating that "Aggravated Manslaughter" was not the correct name of the offense for which a plea was entered and represents a scrivener's error; the parties intended to enter a plea to Manslaughter with a firearm enhancement pursuant to § 775.087(1)(b), Florida Statutes; and the named offense should have been described as Armed Manslaughter or Manslaughter with a Firearm Enhancement/Aggravator, and not "Aggravated Manslaughter." *Id.* at 50-51.  The State filed a response on June 12, 2014, agreeing verbatim with the response of defense counsel.  *Id.* at 52-53.  Neither response was served on Jean-Jacques, according to the certificates of service.

After receiving the responses from counsel, the state court entered an order on July 24, 2014, directing the clerk to amend the judgment "*nunc pro tunc* October 1, 2013, to reflect the offense name for <u>Count I</u> as <u>Manslaughter with a Firearm (lesser included offense)</u>." *Id.* at 56.  This order reflects the same findings that the court made in its May 2014 order regarding the parties' intent.  Additionally, the court noted that in the State and defense counsel's responses to the May 2014 show cause order, "the parties agreed that it was their intent that Defendant plead to the offense of manslaughter with a firearm, not the offense of aggravated manslaughter," and

that in "drafting the plea petition and the related documents, the parties merely used the incorrect name for the relevant offense." *Id.* This order was served on Jean-Jacques at Holmes CI, *id.* at 57, and the judgment was so amended. *Compare* ECF Doc. 21-2 at 69 (original judgment) *with* ECF Doc. 21-3 at 58 (amended judgment).

In this petition, Jean-Jacques raises eleven grounds for relief all arising out of the state court's *nunc pro tunc* order.

## B.    Post-Conviction 3.800 Motion To Correct Illegal Sentence

On December 1, 2014, Jean-Jacques filed a motion to correct illegal sentence under Fla. R. Crim. P. 3.800, challenging the July 24, 2014 order's amendment of the name of the offense. He argued the state judge erred by *sua sponte* investigating the intent of the parties and by amending Jean-Jacques's judgment while still applying the enhancement from § 775.087(1)(b). ECF Doc. 21-3 at 114. Specifically, Jean-Jacques argued that § 775.087(1)(b) should not apply because "Petitioner's offense was listed as a first-degree felony" (Aggravated Manslaughter) and "that reclassification [in § 775.087(1)(b)] applied only to second-degree felonies." Thus, "Petitioner wishes for the court to resentence Petitioner without the upwards reclassification pursuant to Florida Statute § 775.087." *Id.* at 115.

The state court denied the motion on the merits on December 4, 2014. ECF Doc. 21-3 at 139. The state court noted (1) counsel agreed that the intended offense was manslaughter with a firearm rather than aggravated manslaughter; (2) the reference to 775.087(1)(b) in the plea agreement supported that intention because

manslaughter is a second-degree felony (to which (1)(b) applies) while aggravated manslaughter is a first-degree felony; (3) manslaughter is enhanced to a first-degree felony when a firearm is involved; and (4) because the maximum for a first-degree felony is thirty years, Jean-Jacques's sentence of ten years was a legal sentence. *Id.* at 141-42.

Jean-Jacques moved for rehearing on December 19, 2014, arguing that the record did not support the court's finding of intent because it was based only on the intent of counsel, not the defendant himself. *Id.* at 183. Jean-Jacques claimed that "it was his understanding through discussions with his attorney at the time and the discussion between all parties in open court that he would not receive the gun enhancement as part of his negotiated sentence." *Id.* Also, Jean-Jacques claimed that "the gun enhancement for his offense was not orally pronounced by the sentencing judge at the time of sentencing." *Id.* at 184. He also claimed that the term "Aggravated Manslaughter" was used to explain and describe the offense but "the scope of 'Manslaughter (whether aggravated or not) were not discussed with the Defendant." *Id.* at 185. He thus argued that he can only be sentenced for simple manslaughter, and the sentence of ten years of imprisonment followed by ten years of probation exceeds the statutory maximum of fifteen years for "Manslaughter" without the firearm enhancement.[6] *Id.* at 188. The state court denied the motions

---

[6] When a defendant is sentenced to a term in prison followed by probation, the combined times must not exceed the statutory maximum. *State v. Holmes,* 360 So.2d 380 (Fla.1978)

for rehearing and for reconsideration, stating that the motions did not raise any issues not previously considered. ECF Doc. 21-4 at 3-20.

On January 9, 2015, Jean-Jacques appealed the state court's denial of his motion to correct illegal sentence under 3.800(a). ECF Doc. 21-8 at 221. The First DCA affirmed *per curiam* and without written opinion on September 18, 2015. ECF Doc. 21-9 at 33. The mandate issued on October 14, 2015. *Id.* at 34.

### B.    Direct Appeals

Prior to discovering the error in the judgment, on February 14, 2014, Jean-Jacques petitioned the First District Court of Appeals ("First DCA") to allow a belated appeal of his judgment and sentence. ECF Doc. 21-2 at 114. On July 16, 2014, the First DCA *per curiam* denied the petition on the merits, without explanation. ECF Doc. 21-7 at 27.

Also, on July 30, 2014, he filed a petition for writ of certiorari with the First DCA, challenging the July 24, 2014 order. ECF Doc. 21-7 at 35. Later, on October 7, 2014, he filed a petition for belated appeal[7] of the July 24, 2014 order. ECF Doc. 21-7 at 29. On December 31, 2014, the First DCA granted the petition for belated appeal and allowed Jean-Jacques to file a belated appeal, including a challenge to the July 24, 2014 order. ECF Doc. 21-4 at 7. The First DCA then appointed counsel

---

[7] Jean-Jacques titled this filing a petition for belated certiorari review, but the First DCA deemed it a petition for belated appeal of the July 24, 2014 order. ECF Doc. 21-4 at 7.

and later dismissed the petition for writ of certiorari as an unauthorized *pro se* filing by one represented by counsel. ECF Doc. 21-8 at 28.

In the belated appeal of the July 24, 2014 order, counsel filed an *Anders* brief on April 27, 2015. ECF Doc. 21-9 at 48. Jean-Jacques was permitted to file a *pro se* initial brief and did so on June 1, 2015. ECF Doc. 21-8 at 57. The First DCA affirmed *per curiam* and without written opinion on August 5, 2015. ECF Doc. 21-8 at 97. The mandate issued on September 1, 2015.

### C.    State Petition for Writ of Habeas Corpus

On September 19, 2016, Jean-Jacques filed with the First DCA a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel, which he amended twice. ECF Doc. 21-10 at 88. The First DCA denied the amended petition *per curiam* and without written opinion on October 19, 2017, ECF Doc. 21-11 at 86, and denied a motion for rehearing on January 9, 2018. *Id.* at 88.

### D.    The Instant Federal Petition

Petitioner filed the instant federal petition while his September 2016 state habeas petition was still pending by delivering it to prison mail officials on December 28, 2017. ECF Doc. 1. The petition is timely filed because only 320 days of untolled time passed between the date the judgment became final (on November 3, 2015), and the date the state petition for writ of habeas corpus was filed. *See Jiminez v.* Quarterman, 555 U.S. 113 (2009) (holding that judgment does not become final where appellate court grants a defendant the right to file an out of time direct

appeal until "the conclusion of direct review or the expiration of the time for seeking such review").  In other words, because that post-conviction challenge was pending until *after* the filing of the federal petition, no additional untolled time expired before Petitioner filed the instant petition.

## II.  STANDARDS OF REVIEW

### A.  Federal Review Of State Court Decision

Under the standard of review for a § 2254 motion, this Court is precluded from granting habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

However, when there is no state court written opinion setting out the state court's reason for denying relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principle to the contrary."  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  Under that circumstance, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id.* at 98.

As stated above, the state appellate court did not issue a written opinion when it affirmed the judgment on direct appeal or when it denied the September 2016 state petition for habeas corpus relief.  Thus, this Court must apply the principles set forth

in *Richter* and, if a reasonable basis exists for the state court's determination, federal relief must be denied.

### B.    Legal Standard For Ineffective Assistance Of Counsel

In several grounds, Jean-Jacques raises claims of ineffective assistance of appellate counsel.  To prevail on these claims, Jean-Jacques must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  Counsel cannot be ineffective under *Strickland* for failing to raise a meritless claim.  *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("the failure to raise nonmeritorious issues [on appeal] does not constitute ineffective assistance").

## III.    GROUNDS FOR RELIEF

### A.    Ground One: Petitioner's Plea "For A Nonexistent Crime" Violated Fifth, Sixth and Fourteenth Amendments

Jean-Jacques argues the offense "Aggravated Manslaughter" is "not statutorily recognized under Florida Statutes" and "his conviction for such offense must be vacated."[8]  ECF Doc. 1 at 22.  Petitioner exhausted this ground by raising it

---

[8] As an initial matter "Aggravated Manslaughter" is not a "non-existent crime.  *See* Fla. Stat. § 782.07.

as an ineffective assistance of appellate counsel ("IAAC") claim in his state habeas petition (as Ground Seven). *Id.*

The State argues appellate counsel was not ineffective because the record showed that the parties intended to enter a plea agreement to the crime for which Jean-Jacques was convicted and sentenced. Thus, raising this issue on appeal would not have likely resulted in a different outcome for Jean-Jacques. Based on a review of the record, the undersigned agrees and finds a reasonable basis exists for the First DCA's denial of relief on this ground.

Jean-Jacques was told that the offense to which he was pleading guilty carried "[a] minimum of five years, no minimum mandatory; a maximum of ten years [and] no minimum mandatories." ECF Doc. 21-5 at 225. These penalties are consistent with the offense of manslaughter enhanced by a firearm. *See* 775.082(3)(b)(1) (setting thirty (30) years as the maximum penalty for a first-degree felony, with no mandatory minimum). The facts supporting the guilty plea, as stated by the State, and agreed to by Jean-Jacques, were sufficient to support a finding of guilt on the offense of manslaughter enhanced by the use of a firearm. No facts were presented that would have supported the offense of aggravated manslaughter since Brown, the victim, was not "an elderly person, disabled adult, child or an officer, firefighter, or an emergency medical technician or paramedic." Fla. Stat. § 782.07. Also, Jean-Jacques acknowledged that he understood he was admitting guilt to "the charge of Manslaughter." ECF Doc. 21-5 at 241.

Moreover, the written plea agreement provided that the violation of 782.07 would be enhanced by 775.087(1)(b) and result in a "degree of crime" of "(F1)(L8)." ECF Doc. 21-2 at 72. Such a result is only possible if the parties intended Jean-Jacques to plead to regular manslaughter enhanced by use of a firearm, rather than aggravated manslaughter. This is because the offense of manslaughter is a second-degree felony while aggravated manslaughter is a first-degree felony, which the firearm enhancement would turn into a life felony, not a first-degree felony.

Also, the prosecutor and defense stipulated to the correction of the offense listed on the Judgment to 'Manslaughter with a Firearm'" instead of "Aggravated Manslaughter." *Id.* at 25; 50-51. Jean-Jacques was served a copy of the order asking whether the parties stipulated to the correction and did not file any response.

Accordingly, the undersigned finds that a reasonable basis exists for the First DCA's denial of relief on this ground. Although the court and counsel used the wrong name for the offense, the plea colloquy and sentencing transcripts show that counsel, the court, and Jean-Jacques understood the crime to which he was pleading was manslaughter under subsection (1) of Fla. Stat. § 782.07 enhanced by use of a firearm per § 775.087(1)(b). Thus, even had appellate counsel raised this argument on direct appeal, it would have been futile and appellate counsel cannot be found ineffective for failing to raise a meritless claim. *Bolender*, 16 F.3d at 1573. Petitioner is not entitled to relief on this ground.

### B. Ground Two: Petitioner Was Left Without Counsel At Critical Stages Of Court Proceedings In Violation Of Fifth, Sixth and Fourteenth Amendments

Jean-Jacques argues the trial court, acting *sua sponte*, "held a series of *ex parte* hearings to amend the Petitioner's conviction" without allowing Jean-Jacques to be heard or assisted by counsel. ECF Doc. 1 at 23. This violated his right to have counsel at all critical stages of any criminal proceeding against him. *Id.* The State responds that this argument has legs only if the court had resentenced Petitioner, which it had not done by amending the judgment. Instead, the state court merely "amended Petitioner's judgment to conform to everyone's understanding at the time of his plea." ECF Doc. 21 at 40. Thus, Petitioner was not denied counsel at a critical stage of the proceeding.

Jean-Jacques exhausted this claim by raising it as Ground Five in his petition alleging IAAC. Applying the reasonable basis analysis in *Richter*, the undersigned finds that Jean-Jacques is not entitled to relief on this ground.

First, the record is devoid of any "*ex parte* hearings" between defense counsel and the court. ECF Doc. 1 at 23. Also, the process utilized by the court prior to amend the judgment was not conducted *ex parte*. Instead, as set forth above, the court entered an order setting out the court's recollection of the parties' intent at the guilty plea and sentencing hearing and requiring counsel for the parties to respond if that was their recollection as well. The order was posted on the docket and served on Jean-Jacques. ECF Doc. 21-3 at 134. The responses were also filed on the

docket.  The July 24, 2014 order amending the judgment was also served on Jean-Jacques.  *Id.* at 169.  Second, given defense counsel's response to the state Court's order regarding the parties' intent, there is no factual support for Petitioner's argument that counsel abandoned him (even assuming the Court's May 2014 show cause order or the resulting July 2014 order was a "critical stage" of the proceeding).

Jean-Jacques also complains that he had the right to be present and heard before the Court amended the Judgment and that this right was violated.  This argument is also without merit.  Like Jean-Jacques's right to counsel, the Due Process Clause grants criminal defendants a "right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).  The court's conduct in amending the judgment to correct a misnomer, however, was not a "critical stage" of the proceedings.  *Cook v. State*, 947 So. 2d 1207, 1207 (Fla. Dist. Ct. App. 2007) ("appellant's sentence must be corrected to specify that the appellant was convicted of second-degree arson [and not first-degree arson] in case number 04-1798. Because this is a ministerial act, appellant's presence is not required."); s*ee also Shuey v. State,* 950 So.2d 1285 (Fla. 5th DCA 2007); *Palmer v. State*, 141 So. 3d 696, 697 (Fla. 2nd DCA 2014).

Additionally, as stated above, although sentencing is a "critical stage," the court's amendment of the judgment did not alter, affect, invalidate or impose a new sentence on Petitioner.  *See United States v. Jackson*, 923 F.2d 1494, 1496 (11th Cir.

1991) (recognizing sentencing as a "critical stage"); *see also* Fed. R. Crim. P. 43(a)(3) ("[T]he defendant must be present at ... sentencing."). And, even if it did, the court may modify a sentence without a defendant's physical presence unless his presence is necessary for the "fairness of the procedure." *United States v. Parrish*, 427 F.3d 1345, 1347 (11th Cir. 2005); *Stincer*, 482 U.S. at 745; *Jackson*, 923 F.2d at 1496-97.

### C.    Ground Three: Petitioner Was Not Allowed To Respond To State And Former Defense Counsel's Responses To Court's Show Cause Order In Violation Of Fifth, Sixth And Fourteenth Amendments

Jean-Jacques argues that "he requested that he be served a copy of those responses in order to participate in such proceedings," and that the trial court denied his request and "told him that he was not entitled to see those responses." *Id.* Jean-Jacques exhausted this claim by raising it as Ground Six in his state petition for habeas relief as an ineffective assistance of appellate counsel claim. Applying the reasonable basis standard set forth in *Richter*, the undersigned finds that a reasonable basis exists to support the First DCA's denial of relief on this ground.

First and foremost, the record is devoid of any evidence to support Jean-Jacques's claim. Although it does appear that Petitioner was not served a copy of either the prosecutor's or defense counsel's response to the state court's May 2014 Order, there is no evidence in the record showing that the clerk or the court told him "that he was not entitled to see those responses." Instead, the record shows that the

clerk told Jean-Jacques he was not entitled to free copies of the responses.  ECF Doc.

21 at 46 n.9.

Second, even without those responses, Jean-Jacques was served a copy of the

May 13, 2014 order, which informed him of the court's recollection that parties

intended for Petitioner to plead to a manslaughter enhanced by firearm charge.  He

was also served a copy of the July 24, 2014 order directing the clerk to amend the

judgment, ECF Doc. 21-3 at 57, which explained the contents of the responses filed

by the prosecutor and defense counsel.  *Id.* at ¶ 5.  Thus, even without the actual

responses, he clearly knew what the court's and counsels' positions were and yet

failed to respond as well as failed to move for a copy of the responses.

> **D.    Ground Four: Trial Court's Attempt To Correct Original Judgment, *Nunc Pro Tunc*, Violated Fifth, Sixth And Fourteenth Amendments**

Petitioner argues the state court's *nunc pro tunc* amendment of the judgment

violated his constitutional rights because it could not "erase" the reversible errors

that had occurred.  ECF Doc. 1 at 25.  Although Jean-Jacques presented a similar

claim in Ground Three of his belated appeal, he did not frame the issue as a federal

constitutional claim.  Instead, he framed the issue as the rendering of an illegal

sentence under Florida law or a breach of the plea agreement under Florida law.

ECF Doc. 21-8 at 81. Therefore, the undersigned finds that this ground is unexhausted.

Before filing a habeas petition in federal court, a petitioner must exhaust all available state court remedies. 28 U.S.C. § 2254(b), (c). A failure to exhaust occurs "when a petitioner has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (internal quotation marks and brackets omitted). The claim in state court must be presented as based on federal law. Jean-Jacques simply did not do that in this case. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005).

If a petitioner fails to exhaust state remedies, the district court must generally dismiss the claims without prejudice to allow the petitioner an opportunity to present the claims before a state court. *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). However, if it is obvious that the unexhausted claim would be procedurally barred in state court, the federal court should treat the unexhausted claim as procedurally defaulted. *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003); *see also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (*per curiam*) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.").

The undersigned finds that Jean-Jacques is barred under Florida law from returning to state court and presenting these claims in a postconviction motion. Such a motion would be untimely under Fla. R. Crim. P. 3.850(b) because the judgment of conviction became final on November 3, 2015, more than two years ago. Additionally, none of the exceptions to Rule 3.850(b) apply to Jean-Jacques. He knew the facts on which these claims are predicated well before his two-year deadline. Also, Jean-Jacques's claims are not based on a "fundamental constitutional right ... not established within the period provided for herein and ... held to apply retroactively." Rule 3.850(b)(2). Finally, the time for Jean-Jacques to file a 3.850 motion under Rule 3.850(b)(3) has also expired. Therefore, Jean-Jacques has procedurally defaulted this claim, and it should be dismissed unless he can show some exception to the procedural default doctrine (which he cannot do, as discussed below).

The only exception to the doctrine of procedural default is where a petitioner has established "cause and prejudice or the fundamental miscarriage of justice," *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to

his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11ᵗʰ Cir. 2002).

A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Neither the "cause and prejudice" nor "miscarriage of justice" exception saves Petitioner's procedurally defaulted claims. First, Jean-Jacques has presented nothing to suggest that any "objective factor external to the defense impeded the effort to raise the claim[s] properly" in his belated appeal or postconviction motion. *See Wright*, 169 F. 3d at 703. Second, Jean-Jacques also cannot show that the errors he claims in his federal petition infected the entire process "with error of constitutional dimensions" such that there is "a reasonable probability of a different outcome." *Crawford v. Head*, 311 F.3d at 1327-28. As discussed above, the amendment of the judgment by the state court merely conformed the judgment to the intention of the parties. Third, Jean-Jacques does not even argue that he is

actually innocent. He merely alleges trial court error in amending his judgment. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

> ### E. Ground Five: In Attempting To Correct Original Judgment, *Nunc Pro Tunc*, Trial Court Forged And Relied Upon Forged Documents, In Violation Of Fifth, Sixth And Fourteenth Amendments

Petitioner argues, as he did in Ground Two, that his "physical presence" was required before the state court could amend the judgment and also that the court "forged both Judgment, and Sentence documents, and then entered them into the record which falsely stated Petitioner was 1) present, personally before the court when the new judgment and sentence was rendered, which is untrue; 2) that the Petitioner was represented by counsel when the new Judgment and Sentence was rendered, which is untrue; and 3) that the new Judgment and Sentence was rendered in open court, which is also untrue." ECF Doc. 1 at 26.

Petitioner raised this claim as an ineffective assistance of appellate counsel claim in his state petition for writ of habeas corpus. Applying the *Richter* reasonable basis standard, the undersigned finds that Jean-Jacques is not entitled to federal habeas relief on this claim.

As with the above grounds, this claim is belied by the record and should be denied on the same basis. Namely, Petitioner was not resentenced and thus his "physical presence" was not required. As stated above, Florida and federal courts

have held that correction of such a scrivener's error does not require the defendant's presence. *See e.g., Cook*, 947 So. 2d at 1207. Moreover, at the time Petitioner entered his plea on October 1, 2013, Petitioner was present before the court, was represented by counsel, and those proceedings did occur in open court. Thus, the statements in the amended judgment are not false, much less constitute forgery by the state court.

> **F.    Ground Six: First DCA Violated Fifth, Sixth And Fourteenth Amendments By Refusing To Review Jean-Jacques's Petition For Writ Of Certiorari**

In this Ground, Petitioner appears to argue that the First DCA erred in treating the Petitioner's October 2014 petition for certiorari review as a direct appeal of the *nunc pro tunc* corrective orders. ECF Doc. 1 at 27. Petitioner raised this claim for the first time in his September 2016 petition for writ of habeas corpus. Applying the *Richter* reasonable basis standard, the undersigned finds that Jean-Jacques is not entitled to federal habeas relief on this claim. Specifically, the First DCA was correct in dismissing the petition for cert because it was filed *pro se* and Petitioner had been appointed counsel who was representing him in the direct appeal. *See Sheppard v. State*, 17 So.3d 275, 279 (Fla. 2009); *Logan v. State*, 846 So.2d 472, 479 (Fla. 2003). Moreover, the direct appeal included a challenge to July 30, 2014, Order and was thus considered by the First DCA.

### G.    Ground Seven: Trial Court's Attempt To Correct Original Judgment, *Nunc Pro Tunc*, Violated Jean-Jacques's Right Against Double Jeopardy

Petitioner argues "[b]ecause the Petitioner had already began to serve the sentence in which the trial court modified, the trial court violated the finality of the Petitioner's conviction and thus went against the principles of double jeopardy" when it amended the judgment. ECF Doc. 1 at 28. Petitioner raised this claim for the first time in his state petition for writ of habeas corpus as an ineffective assistance of counsel claim.[9] Thus, Jean-Jacques is not entitled to federal habeas relief unless no reasonable basis supports the state court decision. Such a basis exists here.

The Double Jeopardy Clause of the Fifth Amendment commands that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense. *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003). The Eleventh Circuit has instructed that the Double Jeopardy Clause stands for two propositions: "First, the Double Jeopardy Clause bars multiple punishment, i.e., punishment in excess of that permitted by law. Second, the Double Jeopardy Clause respects a defendant's 'legitimate expectations' as to the length of

---

[9] The state argues that to the extent this claim is based on trial court error and not IAAC, it has not been exhausted. Because the undersigned finds that a reasonable basis exists for denying this claim, the undersigned does not address whether the claim was also procedurally defaulted.

his sentence." *United States v. Jones*, 722 F.2d 632, 637 (11th Cir.1983) (citing *United States v. DiFrancesco*, 449 U.S. 117, 132–33 (1980)).  By arguing that the "trial court violated the finality of the Petitioner's conviction," Jean-Jacques appears to contend that the court has frustrated his legitimate expectations as to his sentence.

In *Jones* the Eleventh Circuit ruled that a district court violated the Double Jeopardy Clause when it resentenced a defendant (from a four-year sentence, with all but six months suspended, plus five years of probation, to a four-year term of imprisonment) upon realizing that it had made a factual mistake concerning the defendant's ability to pay restitution.  The panel did so because the defendant's "legitimate expectations" with respect to the duration of the sentence were frustrated by resentencing, and, as a result, the new four-year term of imprisonment violated the defendant's rights under the Double Jeopardy Clause.  *Id.* at 638.

As stated above, the state court did not resentence Jean-Jacques or change his sentence in any way.  Therefore, the amendment of the judgment could not have upset his legitimate expectations as to the length of his sentence.  Double Jeopardy is not triggered by the state court's correction of a clerical error.  "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Bozza v. United States*, 330 U.S. 160, 166 (1947) (holding that an amendment of a judgment to include a statutorily mandated fine in addition to a previously imposed term of imprisonment was not a resentencing or a violation of the Double Jeopardy Clause).

### H.    Ground Eight: Trial Court Erred By Ignoring Collateral Estoppel Prevented The Court From Relitigating The Intent Of The Parties To The Plea Agreement

Petitioner argues the *nunc pro tunc* order constitutes an improper re-litigation of the same issues that culminated in a valid final judgment.  ECF Doc. 1 at 29. Petitioner raised this claim for the first time in his state petition for writ of habeas corpus.  Thus, Jean-Jacques is not entitled to federal habeas relief unless no reasonable basis supports the state court decision.  Such a basis exists here.

No matter how Jean-Jacques attempts to recharacterize what happened in this case, the state court simply amended Petitioner's judgment to conform to everyone's understanding at the time of his plea on October 1, 2013, that he was entering a plea to manslaughter enhanced by use of a firearm to a first-degree felony.  The trial court did not relitigate the issues involved.  Petitioner is not entitled to relief on this ground.

### I.    Ground Nine: Trial Court Omitted Exculpatory Documents From Appeal Record In Violation Of Fifth, Sixth and Fourteenth Amendments

Jean-Jacques argues the trial court "omitted [from the record on appeal] the necessary documents that would have allowed the Petitioner to prove that he had a desire to withdraw his plea but was prevented from doing so as a result of the trial court's actions".  ECF Doc. 1 at 30.  Petitioner raised this claim for the first time in his state petition for writ of habeas corpus.  Applying the *Richter* analysis, the

undersigned finds that Petitioner is not entitled to federal habeas relief because a reasonable basis exists for the state court to have denied relief on this ground.

Although Jean-Jacques does not identify the "omitted documents" in the instant petition, in his state petition, he references a letter he sent to the state judge on July 9, 2014, complaining that he never received a copy of the prosecutor's or his former counsel's response as to the parties' intent in the plea agreement. ECF Doc. 21-10 at 110. That letter was not included in the record on appeal (although the prosecutor's and former counsel's responses were) and, Jean-Jacques argues, appellate counsel was ineffective for failing to require that the July 9, 2014 letter be included in the record. *Id.* He contends counsel's failure to include the letter was prejudicial because the correspondence between the Petitioner and the trial court "was required to show that the Petitioner diligently attempted to withdraw his plea, but the trial court's actions prevented him from doing so." *Id.* at 110-11.

This claim has no merit because the time for Petitioner to withdraw his plea had expired by the time the letter was written. Under Florida law, a defendant who pleads guilty can only file a motion to withdraw the plea within "thirty days after rendition of the sentence." Fla. R. Crim. P. 3.170(*l*). This 30-day period ran from October 31, 2013, when the court sentenced Jean-Jacques and, thus, any attempt to withdraw the plea in 2014 would have been untimely.

**J.    Ground Ten: Under Fifth, Sixth And Fourteenth Amendments, Trial Court Was Required To Find Jean-Jacques Actually Innocent Of "Manslaughter With A Firearm" Because Jean-Jacques Never Entered A Plea To That Offense**

Petitioner argues he was prevented from having "his day in court," when the state court amended the judgment "to a crime that the Petitioner did not enter a plea to" -- Manslaughter with a Firearm.  ECF Doc. 1 at 31.  Petitioner raised this claim for the first time in his state petition for writ of habeas corpus.  Thus, Jean-Jacques is not entitled to federal habeas relief unless no reasonable basis supports the state court decision.  Such a basis exists here for the same reasons as set forth with regard to Grounds One through Three.

**K.    Ground Eleven: Ineffective Assistance Of Appellate Counsel Because Of Cumulative Effect Of Counsel's Numerous Errors On Direct Appeal.**

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal."  *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 821 (2006).  The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine

whether the appellant was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).

Because the undersigned finds that none of Petitioner's individual claims of error or prejudice have merit, Petitioner's cumulative error claim cannot stand. *See United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Accordingly, the undersigned finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## IV.    CONCLUSION

For the reasons above, Jean-Jacques is not entitled to habeas relief on any of his claims.

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.   In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Upon consideration, the undersigned finds

that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

## B. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.      Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the Respondent. *See* Fed. R. Civ. P. 25(d).  The clerk is directed to update the case file information to reflect Mark S. Inch as the Respondent.

Additionally, it is respectfully RECOMMENDED:

1.      That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Jean-Jacques*, 01-2011-CF-004280-A, in the Eighth Judicial Circuit, in and for Alachua County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing; that a certificate of appealability be DENIED; and that the clerk be directed to close the file.

At Pensacola, Florida, this 2nd day of March, 2020.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.